AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

**FILED**

Jul 07 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| DASHAWN TALIFARIO TAYLOR, | ) | Case No.   `4:20-mj-70910-MAG` |
| LEVYONNE IGNACIO-BOOTH, | ) | |
| ANTHONY LAMAR CRAFT, JR., and | ) | |
| TYRONZA HAMPTON, | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 31, 2020 _____ in the county of _____ Alameda _____ in the _____ Northern _____ District of _____ California _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(u) and 2 | Theft From a Federal Firearms Licensee<br>Maximum Penalties: 10 years' imprisonment, three years supervised release, $250,000 fine, forfeiture, possible restitution |
| 18 U.S.C. § 371 | Conspiracy<br>Maximum Penalties: 5 years' imprisonment, three years supervised release, $250,000 fine, forfeiture, possible restitution |

This criminal complaint is based on these facts:

Please see attached affidavit of ATF Special Agent Christopher Bailey in support of the Criminal Complaint.

(approved as to form _SSB_ AUSA Samantha Schott Bennett)

☑ Continued on the attached sheet.

_/s/ Christopher Bailey_
*Complainant's signature*

Christopher Bailey, Special Agent, ATF
*Printed name and title*

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P 4.1 and 4(d).

Date:   _July 7, 2020_

_Judge's signature_

City and state:   _Oakland, California_   Hon. Donna M. Ryu, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christopher Bailey, a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, state:

## I.  INTRODUCTION

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been since February 2009.  I am presently assigned to the ATF Oakland Field Office in Oakland, California.  I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center and Special Agent Basic Training at the ATF National Academy.  The training that I received at the academy included formalized instruction in, among other things, drug, firearms, and violent crime-related investigations, drug identification and detection, interdiction, familiarization with United States drug and firearms laws, financial investigations and money laundering, identification and seizure of drug and firearms tracking related assets, physical and electronic surveillance, weapon qualification and tactics, operation and use of confidential sources, and undercover operations.  Prior to working as an ATF Special Agent, I worked as an industry operations investigator for the ATF and investigated federal firearm and explosive licensees, including manufacturers, importers, and dealers of firearms, for compliance with the Gun Control Act and Code of Federal Regulations.

2.      As an ATF Special Agent, I have conducted and participated in both state and Federal investigations involving the trafficking of firearms and distribution of controlled substances.  I have investigated and assisted in the prosecution of criminal street gangs engaged in illegal narcotics and firearms trafficking.  During these investigations, I have participated in and/or served as the primary case agent in cases involving various types of investigative techniques, including the use of electronic surveillance, assistance from undercover agents and informants, and the controlled purchases of firearms and narcotics from suspects.  I have also participated in physical surveillance operations and the execution of state and federal arrest warrants and search warrants, resulting in state and federal prosecution of defendants.  In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record

1   searches, pen registers and trap and trace devices, financial records, utility records, telephone toll and

2   subscriber records, as well as information gathered from social media.  My work with informants and

3   cooperators has involved, among other things, monitoring meetings and recorded conversations, and

4   generally evaluating the reliability and truthfulness of an informant/cooperator.

5       3.      As a result of my training and experience, I have become familiar with the manner in

6   which illegal firearm and drug traffickers smuggle, transport, store, conceal and distribute firearms and

7   drugs, as well as how they collect and launder proceeds related to such activities.  I am also familiar

8   with the manner in which these individuals use telephones, coded communications, false or fictitious

9   identities, social media, and other means to facilitate illegal activities and thwart law enforcement

10  investigations.  I have also consulted and discussed these investigations with other law enforcement

11  officers and agents who are experienced in these types of investigations.

12      4.      I respectfully submit this Affidavit in support of a Criminal Complaint charging Dashawn

13  Talifario TAYLOR ("TAYLOR"), Levyonne Ignacio-Booth ("IGNACIO-BOOTH"), Anthony Lamar

14  CRAFT Jr. ("CRAFT"), and Tyronza HAMPTON ("HAMPTON") with Theft of Firearms from a

15  Federal Firearms Licensee, in violation of 18 U.S.C. §§ 922(u) and 2, and Conspiracy, in violation of 18

16  U.S.C. § 371.

17      5.      Because this affidavit is being submitted for the limited purpose of securing a criminal

18  complaint and arrest warrants for TAYLOR, IGNACIO-BOOTH, CRAFT, and HAMPTON, I have not

19  included every fact known to me concerning this investigation.  I have set forth only those facts that I

20  believe are necessary to establish probable cause to believe that on or about May 31, 2020, in the

21  Northern District of California, TAYLOR, IGNACIO-BOOTH, CRAFT, and HAMPTON agreed with

22  each other and with others to steal and unlawfully take and carry away, and in fact stole and unlawfully

23  took and carried away, firearms from the premises of a person who is licensed to engage in the business

24  of importing, manufacturing, or dealing in firearms, in violation of 18 U.S.C. §§ 371, 922(u) and 2.

25      6.      Where statements made by other individuals are referenced in this Affidavit, such

26  statements are described in sum and substance and in relevant parts only.  Similarly, where information

27  contained in reports and other documents or records are referenced in this Affidavit, such information is

28  also described in sum and substance and in relevant part only.

**II.     APPLICABLE LAW**

7.      Under 18 U.S.C. § 922(u), it shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce.

8.      Under 18 U.S.C. § 371, it shall be unlawful for two or more persons to conspire either to commit any offense against the United States, and one or more of such persons do any act to effect the object of the conspiracy.

9.      Under 18 U.S.C. § 2, whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

**III.    FACTS ESTABLISHING PROBABLE CAUSE**

        31 Firearms are Stolen from Federal Firearms Licensee

10.     As an ATF SA, I have access to the licensing records of persons engaged in the business of importing, manufacturing, or dealing in firearms.  I know that the Victim Federal Firearms Licensee ("Victim FFL") is a person and premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms.

11.     I have reviewed surveillance video from the Victim FFL in Hayward, California, from May 31, 2020.  The surveillance video appears to be approximately one hour and four minutes behind the accurate time.

12.     Based on my review of surveillance video from the location, at approximately 10:21 p.m. that night, four vehicles arrived to the area with approximately fourteen suspects.[1]  The Victim FFL is located in an industrial area and was not open to the public at this time.

13.     Approximately nine individuals got out of the cars and walked near the door to the Victim FFL.  As they stood around, I observed one suspect in a red sweatshirt walk up and down the street in front of the Victim FFL for several minutes while appearing to talk and text on a cell phone.

//

---

[1] Several subjects were not seen on surveillance footage because they stayed inside the vehicles.

14.     The other suspects stood around the door to the Victim FFL as one read the signs on the door.  Another suspect appeared to point at the neighboring business, whose name resembles that of several marijuana dispensaries.  The suspects then appeared to turn their focus back to the Victim FFL and proceeded to force entry by breaking the window in the entry door and reaching in to unlock the deadbolt.  Approximately eight male suspects then entered the store and proceeded to break the glass cases to obtain handguns, and to rip rifles off the walls, as depicted in the following surveillance stills.





15.     Several, but not all, of the suspects were wearing masks and/or hooded sweatshirts, and gloves.  However, at least two of the suspect individuals were not wearing gloves.  After attempting to break a glass display case containing numerous handguns, the individuals – one of whom appeared to be wearing a camouflage sweatshirt and mask, and one of whom appeared to be wearing a ski mask with curly hair extending out from under the mask – put their hands on and inside the display case in order to obtain firearms from inside.  This is depicted in the surveillance stills above, and in the image below, where red circles have been added to indicate where ungloved hands touched the display case.



16.     Hayward Police Department officers responded shortly after the suspects fled.  I have reviewed HPD incident reports relating to the above-described incident.  The following day, after surveillance footage was reviewed, an HPD Crime Scene Technician (CST) was subsequently dispatched to the Victim FFL to recover fingerprints, palm prints and foot prints from the glass display cabinet, where the two individuals described above had placed their hands.  The recovered prints were sent to examiners to be analyzed.

17.     The Victim FFL completed a review of the store inventory and determined that approximately 31 firearms had been stolen from the store on May 31, 2020.  I have reviewed the details of the stolen firearms and based on my training and experience as a firearms and ammunition interstate nexus expert with ATF, and my review of the make and model of the firearms, I believe that at least 27

of the 31 firearms had been shipped or transported from one state to another, or from a foreign country to the United States, before arriving in California.[2]

Identification of Dashawn Talifario TAYLOR

18.     I have reviewed Oakland Police Department (OPD) reports regarding the arrest of Dashawn Talifario TAYLOR on or about June 6, 2020.  On that date, in Oakland, California, OPD officers attempted to stop a vehicle fleeing from the scene of a shooting.  The vehicle crashed during flight, but before the crash OPD officers observed Dashawn TAYLOR in the front passenger seat.  The occupants ran from the car and TAYLOR was apprehended.  OPD officers recovered one FN model FNS-9C firearm, bearing serial number CSU0056770, in the glove compartment of the vehicle, directly in front of where TAYLOR had been sitting.  TAYLOR admitted to OPD officers that he possessed the FN firearm.  I have reviewed the information provided by the Victim FFL and I know that the FN firearm was stolen from the Victim FFL on May 31, 2020.  I further know that the FN firearm was not manufactured in the state of California and therefore was shipped from one state to another or from another country to the United States in order to arrive in California.

19.     I compared TAYLOR's booking photograph (photo A below) with surveillance images from the burglary of the Victim FFL (photos B, C, and D below).  Based on my training and experience, and my review of the images, I believe that TAYLOR is the individual in the red "CAU" sweatshirt who participated in the burglary and theft of firearms from the Victim FFL.

//

//

---

[2] As discussed further below, at least three of these firearms were manufactured in the state of California.  However, as of the date of this affidavit, further investigation is ongoing to determine whether the firearms traveled in or otherwise affected interstate commerce following their manufacture but before May 31, 2020.

1
2
3
4
5
6
7
8
9



A.



B.

10
11
12
13
14
15
16
17
18
19
20
21



C.



D.

22      20.      Pursuant to a federal search warrant, I received Google data for mobile devices in the

23  area of the Victim FFL at/around the time of the burglary.  I have reviewed the data provided by Google

24  in response to the warrant, which indicates that a mobile device that appears to be associated with

25  TAYLOR's girlfriend at the time, logged in and was in the immediate vicinity of the Victim FFL

26  at/around the time of the burglary.

27  //

28

21.     Pursuant to a federal search warrant, I received historical call detail records with location data for a cellular device seized from TAYLOR during his arrest on June 6, 2020.  Location data shows that TAYLOR's cellular phone exchanged a phone call and was located in the area of the Victim FFL on May 31, 2020, approximately two hours before the burglary.  Following that phone call and corresponding location data, no data was received until approximately 3:00 a.m. on June 1, 2020.  Based on my training and experience as an ATF SA and my experience investigating FFL burglaries, I believe that TAYLOR was in the area casing a neighboring business, but subsequently turned off his phone and left if off until hours later in an attempt to avoid leaving a trace of his whereabouts.

Identification of Levyonne IGNACIO-BOOTH

22.     I have reviewed reports from the HPD Latent Print Unit which indicate that Levyonne IGNACIO-BOOTH's fingerprint – namely, from his left little finger – was recovered from the exterior top surface of the glass display case.

23.     Review of the surveillance video shows IGNACIO-BOOTH, one of only a few suspects who appear not to be wearing gloves, grabbing a shotgun located on the top of the display case with his left hand, as seen depicted in the photo C below.  This would explain why the print from his left little finger would be on this portion of the display case.  Based on my review of the surveillance video, my conversations with the Victim FFL and review of the inventory of firearms stolen during the burglary, I determined that the firearm IGNACIO-BOOTH grabbed is a Garaysar, Inc. model Fear-109 12 gauge shotgun bearing serial number 19GP-00277.  Based on my training and experience, I know that this firearm was not manufactured in the state of California, and therefore was shipped from one state to another or from another country to the United States in order to arrive in California.

24.     I compared IGNACIO-BOOTH's DMV photograph (photo A below) with surveillance images from the burglary of the Victim FFL (photos B, C, and D below).  Based on my training and experience, my review of the images, and the presence of IGNACIO-BOOTH's fingerprint on the location where the individual depicted in photo C touched the display case (red circle added to indicate IGNACIO-BOOTH's ungloved hand), I believe that IGNACIO-BOOTH participated in the burglary and theft of firearms from the Victim FFL.

//

8




A.                                           B.




C.                                           D.

Identification of Anthony Lamar CRAFT, Jr.

25.    I have reviewed reports from the HPD Latent Print Unit which indicate that Anthony Lamar CRAFT, Jr.'s fingerprints were recovered from the exterior top surface of the glass display case.

26.    CRAFT has previously been convicted of California Penal Code § 25400(A)(2), Carrying a Concealed Weapon; California Penal Code § 460(B), Second Degree Burglary; and 18 U.S.C. § 3146(A)(1) and (B)(1)(A)(II), Failure to Appear; all felonies punishable by greater than one year in prison.  Accordingly, CRAFT is prohibited from possessing firearms or ammunition under both state and federal law, and would have no legitimate reason to be inside the Victim FFL.

//

27.     I compared CRAFT's DMV photograph (photo A below) with surveillance images from the burglary of the Victim FFL (photos B, C, and D below, with CRAFT's ungloved hands circled in red).  Based on my training and experience, my review of the images, and the presence of his fingerprints on the location where the individual depicted in photos C and D touched, I believe that CRAFT participated in the burglary and theft of firearms from the Victim FFL.  CRAFT also resembles the individual seen on surveillance video in the camouflage sweatshirt, who appears to be one of only a few suspects not wearing gloves.



A.                                                          B.



C.                                                          D.

28.     I have also reviewed a publicly viewable Instagram account I believe belongs to CRAFT. The Instagram account contains numerous photographs of CRAFT.  On or about June 19, 2020, CRAFT posted the photograph below to his Instagram story:

//

1

2

3

4

5

6

7

8

9

10

11

12

13



14    29.    In the photograph, CRAFT appears to be holding a Sig Sauer P365 pistol and a Sig Sauer

15  P365 SAS pistol.  One of each model was stolen from the Victim FFL on May 31, 2020.  I know, based

16  on my training and experience, that the P365SAS is a new model, which does not yet appear to be in

17  wide circulation.  I also know, based on my training and experience as a firearms and interstate nexus

18  expert with ATF, that both of these types of firearms had to be shipped or transported from one state to

19  another in order to arrive in California.

20  Identification of Tyronza HAMPTON

21    30.    I have reviewed surveillance footage depicting the vehicles involved in the theft from the

22  Victim FFL on May 31, 2020.  One of the vehicles appeared to be a gold Buick sedan, with a sheet of

23  paper in the dashboard, a square white sticker in the bottom right corner of the rear window, and rear

24  window tint showing bubbling in a specific area of the window.  CRAFT and HAMPTON, as described

25  below, arrived and left in the gold Buick sedan after stealing firearms from the Victim FFL.  Still

26  photographs from the surveillance footage are below:

27  //

28

11



31.     On June 18, 2020, OPD officers contacted HAMPTON regarding California Vehicle Code violations.  At the time, HAMPTON was seated in the front passenger seat of a gold Buick sedan parked in the area of the 9100 block of International Boulevard of Oakland, California.  The gold Buick sedan had a square white sticker in the bottom right corner of the rear window, and there was a memorial card sitting on the dashboard.  Additionally, the wear shown on the rear window tint appeared identical to the Buick used in the burglary.  HAMPTON was the sole occupant of the vehicle.  When HAMPTON observed the officers approaching, he quickly stepped out of the vehicle and closed the door leading officers to believe there may have been contraband inside.  HAMPTON was given a verbal warning and the officers departed the area.  The officers recorded audio and video of the contact with HAMPTON, which showed the matching features of the vehicle to surveillance video captured at the Victim FFL.  I reviewed the video from this OPD contact and also noticed that HAMPTON appears to be wearing the same shoes as the driver of the gold Buick sedan the night of the burglary.  Still images from the video contact are provided below:




32.     As described above, I have reviewed an Instagram account associated with CRAFT.  I observed that on or about August 7, 2018, CRAFT posted the photograph below, depicting CRAFT and HAMPTON sitting together on the hood of a gold Buick, indicating that they have been friends for several years.  On or about June 28, 2020, I viewed a video posted to CRAFT's Instagram account, which showed CRAFT and HAMPTON together in a vehicle.



33.     Photographs posted to an Instagram account associated with HAMPTON showed that HAMPTON has unique hand tattoos (depicted in photo B below).  I compared the tattoos to the hand tattoos of one of the individuals depicted in the Victim FFL surveillance video (circled in red in the full surveillance photos below, and cropped in photo A below), who is seen on video grabbing rifles off the wall, and smashing a glass case.  The individual appears to have put on gloves outside of the Victim FFL, but his hand tattoos can be seen through the gloves on the surveillance footage, when the lights in the store are off.  Based on my training and experience, and observations, I believe that the hand tattoos

are the same, and that HAMPTON is the individual depicted in the surveillance footage stealing rifles from the Victim FFL.

 

A.                                                          B.



//

34.      Based on my review of surveillance video from the burglary, conversations with the victim FFL, and inventory of the stolen firearms, I determined that the rifles removed from the wall by HAMPTON were two Anderson Manufacturing (made by the Victim FFL and not yet serialized) AM-15 5.56 caliber rifles.  I further identified the firearm lower receiver removed by HAMPTON from the glass case as a Juggernaut Tactical model JT-15 .223/5.56 caliber rifle bearing serial number 1505144481. These three firearms were manufactured in the state of California.[3]

**IV.      CONCLUSION**

35.      Based on the information set forth in the paragraphs above, I submit that there is probable cause to believe that on or about May 31, 2020, in the Northern District of California, Dashawn Talifario TAYLOR, Levyonne IGNACIO-BOOTH, Anthony Lamar CRAFT, Jr., and Tyronza HAMPTON agreed with each other and with others to steal and unlawfully take and carry away, and in fact stole and unlawfully took and carried away, firearms from the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, in violation of 18 U.S.C. §§ 371, 922(u) and 2.

---

[3] While these three firearms were manufactured in the state of California, further investigation is ongoing to determine whether they traveled in interstate commerce following their manufacture but before May 31, 2020.

1       36.    Accordingly, based upon the foregoing, I respectfully request that the Court sign the

2  requested criminal complaint and issue the requested arrest warrants.

3       37.    I declare under penalty of perjury that the statements above are true and correct to the

4  best of my knowledge and belief.

6                                 /s/ Christopher Bailey

7                                 Christopher Bailey
                                 Special Agent

8                                 Bureau of Alcohol, Tobacco, Firearms and
                                 Explosives

11  Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) this

12  ____7th__ day of July, 2020.

15  HONORABLE DONNA M. RYU
    UNITED STATES MAGISTRATE JUDGE